The Honorable David Shade, Chair Arkansas Board of Examiners in Psychology 101 East Capitol, Suite 414 Little Rock, AR 72201
Dear Chairman Shade:
I am writing in response to your request for my opinion regarding the potential application to forensic psychological records of A.C.A. §16-46-106, which provides that patients upon request be provided their medical records in anticipation of or for use in litigation. Specifically, you have asked the following questions:
 1. Is a party involved in a court-ordered custody evaluation by a court-appointed psychologist, licensed by ABEP [the Arkansas Board of Examiners in Psychology], considered to be a "patient" of that evaluator as a result of such court appointment for the limited purpose of such evaluation and report to the court, for purposes of determining the applicability of A.C.A. § 16-46-106, "Access to Medical Records"? In other words, is a party, involved in a legal proceeding regarding custody determination, who has been ordered to submit to an evaluation by a court-designated psychological evaluator who is examining all of the pertinent parties involved in that legal proceeding, a "person who is or has been a patient of a doctor, hospital, ambulance provider, medical health care provider, or other medical institution" and therefore entitled to obtain access, personally or by and through his or her attorney, to information in his or her medical records, as limited by other provisions in that statutory section?
 2. If the opinion is that such an evaluated party is not a "patient" of the psychologist under these circumstances, does that party have to otherwise resort to the existing subpoena process and/or a court-issued order to obtain access to the professional's records of that evaluation rather than merely requesting those records, personally or by and through his or her attorney, by communication directly conveyed to that professional? In other words, does the lack of "patient" status, if so opined under these circumstances, make § 16-46-106 inapplicable to those circumstances so that other available records-procurement methods need to be pursued by the examinee?
You have asked me to assume that the examiner has not previously provided the examinee any psychological counseling.
RESPONSE
No Arkansas authority directly addresses your first question. Although I believe the courts or the legislature would probably conclude that the disclosure statute applies to an examinee seeking custody of a child, I cannot offer this as a formal opinion in the absence of legislative or judicial guidance. With respect to your second question, if a finder of fact determined that the examinee did not qualify as a "patient," I believe A.C.A. § 16-46-106 would not apply and the examinee would need to obtain the records through other available avenues of discovery.
Question 1: Is a party involved in a court-ordered custody evaluation bya court-appointed psychologist, licensed by ABEP [the Arkansas Board ofExaminers in Psychology], considered to be a "patient" of that evaluatoras a result of such court appointment for the limited purpose of suchevaluation and report to the court, for purposes of determining theapplicability of A.C.A. § 16-46-106, "Access to Medical Records"? In otherwords, is a party, involved in a legal proceeding regarding custodydetermination, who has been ordered to submit to an evaluation by acourt-designated psychological evaluator who is examining all of thepertinent parties involved in that legal proceeding, a "person who is orhas been a patient of a doctor, hospital, ambulance provider, medicalhealth care provider, or other medical institution" and thereforeentitled to obtain access, personally or by and through his or herattorney, to information in his or her medical records, as limited byother provisions in that statutory section?
Subsection 16-46-106(a)(1) of the Arkansas Code provides:
 In contemplation of, preparation for, or use in any legal proceeding, any person who is or has been a patient of a doctor, hospital, ambulance provider, medical health care provider, or other medical institution shall be entitled to obtain access, personally or by and through his or her attorney, to the information in his or her medical records, upon request and with written patient authorization, and shall be furnished copies of all medical records pertaining to his or her case upon the tender of the expense of such copy or copies.
Your question is whether the subject of a court-ordered psychological evaluation qualifies as a "patient" entitled to the disclosure described in this statute.
As a general proposition, one must construe statutory language just as it reads, "giving the words their ordinary and usually accepted meaning in common language." Brimer v. Arkansas Contractors Licensing Bd.,312 Ark. 401, 405, 849 S.W.2d 948 (1993). By the same token, as the Supreme Court observed in Bush v. State, 338 Ark. 772, 776, 2 S.W.3d 761 (1999): "It is axiomatic that the meaning of certain words or phrases cannot be determined in isolation, but must be drawn from the context in which they are used."
The term "patient" can be variably defined depending on the context. In its most common sense, the term "patient" denotes "[a] person under medical or psychiatric care," Black's Law Dictionary (7th ed. 1999), or "a person who is under medical care or treatment," Random House Webster'sUnabridged Dictionary (2nd ed. 1998). However, Ark. R. Evid. 503(a)(1), codified at A.C.A. § 16-41-101, provides a broader definition to be applied in determining whether the physician/psychotherapist/chiropractor-patient privilege applies: "A `patient' is a person who consults or is examined or interviewed by a physician or psychotherapist." This latter definition, which does not require that the examination be for the purpose of treatment, appears broad enough to cover an individual subjected to a court-ordered psychological examination in connection with a custody dispute. See,e.g., Simmons v. Rehab Xcel, Inc., 731 So.2d 529, 531-32 (La.App. 1999) (expressly declaring that conducting an independent forensic medical examination creates a physician-patient relationship); Elkins v. Syken,672 So.2d 517, 519 (Fla. 1996) and Crandall v. Michaud, 603 So.2d 637,637 (Fla. 1992) (both describing as "patients" litigants subjected to independent medical examinations by defendants).
The question, then, is whether the legislature intended this broader usage to apply in the statute at issue in your request. It is well established that the subject matter of a statute in itself may provide guidance in resolving any statutory ambiguities. ACW, Inc. v. Weiss,329 Ark. 302, 313, 947 S.W.2d 770 (1997). Subsection 16-46-106(a)(1) of the Code is clearly designed to expedite the litigation process by making readily available to any "patient" his or her medical records if these might be at issue in a case, regardless of whether the patient is a party or a witness. This broad purpose would appear to apply equally to treatment records offered to establish injury, as with medical records in a classic tort action, and to psychological evaluations undertaken solely to test someone's fitness to assume child custody. Consequently, I believe the apparent legislative intention underlying the statute would be better served by broadly defining "patient" to include not only those who have received treatment, but also those who have undergone a medical or psychological evaluation that bears on the litigation.[1]
The most closely analogous case I have found addressing the issue raised in your request is Cleghorn v. Hess, 853 P.2d 1260 (Nev. 1993), in which the Nevada Supreme Court ruled that individuals examined by a psychologist to determine their suitability for employment were "patients" within the meaning of a statute requiring health-care providers to make a patient's records available upon request. The Court's cogent analysis in support of this holding is worth reproducing at some length:
 Although there is no definition of patient provided in Chapter 629, a "patient" is defined in our evidence statutes as "a person who consults or is examined or interviewed by a doctor for purposes of diagnosis or treatment." NRS 49.215(3). The word patient has similarly been defined as "a person seeking medical services for examination or treatment." See 46 Am.Jur. Proof of Facts 2d 395 (1986). The Wackenhut employees were undeniably interviewed and examined by Hess in order to determine their psychological suitability for employment. Dr. Hess and Wackenhut assert that Dr. Hess examined and evaluated Cleghorn and the IGAN members, but did not provide medical treatment to them. The distinction, if indeed one exists, between a psychological evaluation and psychological treatment, is hardly the determinative linchpin Dr. Hess and Wackenhut would have it be.
 The cases relied on by Dr. Hess and Wackenhut generally deal with tort liability. Dr. Hess and Wackenhut argue that the examined employees are not "patients" because they do not receive nor do they reasonably expect medical treatment in connection with their employer-required examination. This determination is crucial to a medical malpractice case, where the duty of care, and hence liability, is defined by whether a doctor-patient relationship exists. See Felton v. Schaeffer, 229 Cal.App.3d 229, 279 Cal.Rptr. 713 (1991); Keene v. Wiggins, 69 Cal.App.3d 308, 138 Cal.Rptr. 3 (1977). However, it is not germane to the issue of whether employees should have access to psychological information that has been collected about them by their employer.
 Furthermore, to say in the instant case that the employees were not patients because they did not receive treatment is to split hairs. The employees were tested, examined, and evaluated by a psychologist. The definition of "patient" utilized by other jurisdictions when considering tort liability is not necessarily appropriate in the instant case, and a more liberal definition of "patient" would be in harmony with the legislative intent behind the enactment of NRS 629.061. The intent of the legislature is the controlling factor in statutory interpretation. State, Dep't of Mtr. Vehicles v. McGuire, 108 Nev. 182, 184, 827 P.2d 821, 822 (1992). When the language of a statute is clear on its face, its intention must be deduced from such language. Id. The statute is clearly intended to provide, rather than prevent, access to medical records. . . .
 Dr. Hess and Wackenhut further assert that the psychological examinations were conducted for the sole benefit of Wackenhut, and thus, no physician-patient relationship arose between Dr. Hess and the examinees. When an employee is required, as a condition of employment, to submit to a medical examination, that examination creates a relationship between the examining physician and the examinee, at least to the extent of the tests conducted. Green v. Walker, 910 F.2d 291, 296 (5th Cir. 1990) (interpreting Louisiana law); see also Daly v. U.S., 946 F.2d 1467 (9th Cir. 1991) (interpreting Washington law); Betesh v. United States, 400 F.Supp. 238 (D.D.C. 1974) (interpreting Maryland law). But see Beaman v. Helton, 573 So.2d 776 (Miss. 1990). The duty of care imposed on the doctor performing those tests runs to the employee being examined as well as the employer. Green,
910 F.2d at 296. Whether the employee is called a "patient" or an "examinee" is irrelevant. The key factor here is that the Wackenhut employees are the ones who were tested, examined, and evaluated and should correspondingly have access to the results of that testing.
I fully agree with the Nevada Supreme Court's analysis. For purposes of determining whether someone is a "patient," I see no material distinction between a potential employee and a potential custodial parent undergoing psychological evaluation. In both instances, I believe the psychologist is not only bringing his or her professional insights to bear on the forensic issue; he or she is further professionally obligated to consider the welfare of the examinee — a conclusion that in my opinion renders the examinee a "patient." However, I further appreciate that neither the legislature nor any Arkansas court has ruled on this issue. This is not Nevada, and I am an executive, not a judicial, officer. As my immediate predecessor noted in Ark. Op. Att'y Gen. 98-025:
 This office has consistently taken the position that in the absence of a legislatively-or judicially-formulated definition, it is inappropriate for the Attorney General, being a member of the executive branch of government, to formulate a controlling definition. For the Attorney General to do so would constitute an impermissible violation of the separation of powers principle embodied in Article 4 of the Arkansas Constitution. See, e.g., Ops. Att'y Gen. Nos. 97-268; 96-330; 96-226; 96-142; 95-400; 95-296; 93-272.
Consequently, in the absence of legislative or judicial guidance, I cannot opine conclusively on your question.
Question 2: If the opinion is that such an evaluated party is not a"patient" of the psychologist under these circumstances, does that partyhave to otherwise resort to the existing subpoena process and/or acourt-issued order to obtain access to the professional's records of thatevaluation rather than merely requesting those records, personally or byand through his or her attorney, by communication directly conveyed tothat professional? In other words, does the lack of "patient" status, ifso opined under these circumstances, make § 16-46-106 inapplicable tothose circumstances so that other available records-procurement methodsneed to be pursued by the examinee?
Assuming I am correct in my tentative response to your first question, your second question is moot. However, if a court or the legislature determined that the examinee in your hypothetical was not a "patient," in my opinion A.C.A. § 16-46-106 would not apply. Accordingly, an examinee seeking his or her records would need to rely on the standard means of discovery set forth in the Arkansas Code and Rules of Civil Procedure.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] See also Ark. R. Evid. 503(d)(2), which sets forth the following exception to the psychologist-patient privilege:
 EXAMINATION BY ORDER OF THE COURT. If the court orders an examination of the physical, mental, or emotional condition of a patient, whether a party or a witness, communications made in the course thereof are not privileged under this rule with respect to the particular purpose for which the examination is ordered unless the court orders otherwise.
Like the statute at issue, this rule of evidence reflects the policy of ready access to all pertinent medical information.