MINERAL COUNTY; MINERAL COUNTY BOARD OF COMMISSIONERS; AND MINERAL COUNTY ASSES-SOR, APPELLANTS, v. THE STATE OF NEVADA, BOARD OF EQUALIZATION AND DAY & ZIMMERMAN HAWTHORNE CORPORATION, RESPONDENTS.

No. 40609

September 15, 2005                                119 P.3d 706

HARDESTY, J., with whom BECKER, C. J., and DOUGLAS, J., agreed, dissented.

*Andrew A. List,* Carson City; *Rachel H. Nicholson,* Canonsburg, Pennsylvania, for Appellants.

*Brian Sandoval,* Attorney General, and *Dawn Nala Kemp,* Deputy Attorney General, Carson City, for Respondent State Board of Equalization.

*Hawkins Folsom & Muir* and *Gordon R. Muir,* Reno, for Respondent Day & Zimmerman Hawthorne Corporation.

*Noel Waters,* District Attorney, and *Mary-Margaret Madden,* Deputy District Attorney, Carson City, for Amicus Curiae Carson City County Assessor.

## OPINION

By the Court, MAUPIN, J.:

In this appeal, we consider whether a county may seek judicial review of decisions issued by the State Board of Equalization (State Board) under NRS Chapter 233B, the Nevada Administrative Procedure Act (APA). We conclude that it may.

### FACTS AND PROCEDURAL HISTORY

Day & Zimmerman Hawthorne Corporation (DZHC) contracts with the federal government to manage and maintain the Hawthorne Ammunition Depot in Mineral County, Nevada. DZHC disputed Mineral County's valuations of the depot for tax years 1998-1999 and 2000-2001. As a result, the State Board reviewed the County's valuations and issued two decisions resulting in a substantial net decrease in taxable value. Shortly thereafter, the County filed separate petitions for judicial review under the APA. The State Board and DZHC moved jointly to dismiss the petitions. The district court granted the motions, concluding that NRS 361.420, which specifies procedures for ''property owner'' appeals of State Board determinations, impliedly prohibits challenges to State Board determinations by persons or entities other than ''property owners.'' Mineral County appeals.

As NRS 361.420 is silent with regard to a county's ability to seek judicial review of State Board decisions, we hold that a county may petition for judicial review of such determinations under the APA, in particular, NRS 233B.130(1). Accordingly, we reverse the district court's order.

## DISCUSSION

Construction of a statute is a question of law, which this court reviews de novo.[1] This court interprets statutes according to their plain meaning unless such an interpretation would run contrary to the spirit of the statutory scheme.[2] Potentially conflicting statutes are harmonized whenever possible.[3]

The County claims authority to challenge State Board decisions under NRS 233B.130(1), which addresses an aggrieved party's ability to obtain judicial review of a state agency decision, as follows:

> 1. Any party who is:
> (a) Identified as a party of record by an agency in an administrative proceeding; and
> (b) Aggrieved by a final decision in a contested case,
> is entitled to judicial review of the decision.

Relying upon language from NRS 233B.020(2), stating that "[t]he provisions of [NRS Chapter 233B] are intended to supplement statutes applicable to specific agencies," the County argues that the APA simply augments the taxpayer appeal provisions of NRS Chapter 361, thus permitting local government entities to petition for judicial review.

The State Board responds that a reading of other language within the APA requires deference to the more specific administrative procedures set forth in NRS Chapter 361. In this, the State Board relies upon the statement in NRS 233B.020(2) that "[NRS Chapter 233B] does not abrogate or limit additional requirements imposed on such agencies by statute or otherwise recognized by law," and further upon NRS 361.420(2), which provides that property owners may institute an action if denied relief by the State Board:

> The property owner, having protested the payment of taxes as provided in subsection 1 and having been denied relief by the State Board of Equalization, may commence a suit in any court of competent jurisdiction in the State of Nevada against the State and county in which the taxes were paid . . . .

The State Board argues that NRS 361.420(2), when read with NRS 233B.020(2), specifically limits district court jurisdiction over its

---

[1] *Gilman v. State, Bd. of Vet. Med. Exam'rs,* 120 Nev. 263, 271, 89 P.3d 1000, 1005-06 (2004).

[2] *University Sys. v. Nevadans for Sound Gov't,* 120 Nev. 712, 731, 100 P.3d 179, 193 (2004).

[3] *Beazer Homes Nevada, Inc. v. Dist. Ct.,* 120 Nev. 575, 587, 97 P.3d 1132, 1140 (2004).

decisions to petitions for judicial review brought by taxpayers or property owners. The State Board underscores its argument by reference to NRS 361.410(1), which states in part that "[n]o *taxpayer* may be deprived of any remedy or redress in a court of law relating to the payment of taxes, but all such actions must be for redress from the findings of the State Board of Equalization." (Emphasis added.)

Given the discrete language governing NRS Chapter 361 challenges to State Board decisions, the State Board argues that NRS Chapter 361 procedures preempt the APA under the fundamental principles of statutory construction; here, that statutes specific to particular sets of circumstances take precedence over statutes of general application.[4] From this, as stated, the State Board reasons that *NRS* 361.410(1) and *NRS* 361.420(2) exclusively govern judicial review of State Board decisions, thus depriving local governments of a medium for review when such decisions are adverse to them. We disagree.

NRS 361.410(1) and NRS 361.420(2) provide a specific mechanism for taxpayers to protest State Board valuations. Neither explicitly precludes local governments from doing so.[5] And neither abrogates or limits the rights of property holders to challenge State Board decisions. Thus, even though NRS 361.410(1) and NRS 361.420(2) include specific provisions concerning taxpayer protections, these statutes do not take precedence over the APA under these circumstances, as they do not expressly govern the rights of a local government such as Mineral County. Consequently, we conclude that the provisions of NRS Chapter 361 supplement, rather than preempt, the provisions of NRS Chapter 233B, particularly NRS 233B.130(1)'s provision that an aggrieved party may petition for judicial review of an agency decision. This interpretation is optimal because it permits harmonious construction of NRS Chapter 233B and NRS Chapter 361.

Policy reasons also support our decision on this issue. For instance, denying a county's right to judicial review would allow the

---

[4]*See SIIS v. Miller,* 112 Nev. 1112, 1118, 923 P.2d 577, 580 (1996).

[5]The *State Board asserts that the Legislature's explicit provision for county petitions seeking judicial review of Nevada Tax Commission decisions under* NRS 360.245(7) demonstrates legislative intent to preclude county petitions for judicial review of State Board decisions. We disagree and conclude that had the Legislature intended to preclude county petitions of State Board decisions, it could have explicitly stated that intent.

We also reject the State Board's assertion that the history of legislation introduced during the 2005 legislative session as S.B. 186—demonstrating that the bill "died" in committee—determines the issue presented in this case. An uncontradicted affidavit submitted by a proponent of the bill, who also represents Mineral County in this case, indicates that the proponents withdrew the bill before the Legislature could fully consider it.

State Board to set binding precedent regarding state tax legislation, which could subject county citizens to an unjust outcome and an inequitable distribution of taxes in the event of an incorrect interpretation and application of law. Further, interpreting NRS Chapter 361 as restricting a local government's right to seek judicial review of a State Board decision would leave local governments without a remedy in such instances.

## CONCLUSION

As NRS 361.420 presents no barrier to a county's right to seek judicial review of a State Board decision, Mineral County may seek judicial review under NRS 233B.130(1). Accordingly, we reverse the district court's order dismissing Mineral County's petitions and remand this case for proceedings consistent with this opinion.

GIBBONS and PARRAGUIRRE, JJ., concur.

ROSE, J., concurring:

Any party aggrieved by an administrative decision may appeal the decision to the district court for judicial review.[1] This is a time-honored right rooted in fairness and procedural due process. The Legislature was well aware of the statutory real property taxation scheme set forth in NRS Chapter 361 when it enacted NRS 233B.130(1) and the Administrative Procedure Act. Had it wanted to expressly eliminate a county's right to appeal from an administrative decision, it certainly could have done so. The Legislature was not "silent" on permitting a county to appeal from an adverse decision of the Board of Equalization as the dissent claims because the Legislature has passed the overarching Administrative Procedure Act that specifically provides for the right of all parties to appeal from an adverse administrative decision.

This court has previously emphasized the general proposition that an agency should be permitted to appeal an adverse administrative decision. In *State, Department of Motor Vehicles v. McGuire,* a hearing officer ruled after a license revocation hearing that the allegedly drunk driver was entitled to a seven-day temporary driving permit.[2] The Department of Motor Vehicles appealed the decision to the district court, where the driver asserted that the Department did not have the right to appeal under NRS 233B.130 since the law allowed only a "person" and not an agency to seek judicial review. This court concluded that the amendment to NRS 233B.130 the succeeding year changed "person" to "party"

---

[1]NRS 233B.130(1).

[2]108 Nev. 182, 827 P.2d 821 (1992).

and showed an intent to retroactively modify the statute. This court then went on to state: "Finally, '[t]he right of appeal . . . should not be taken away unless clearly intended by the statute. Any doubt about the construction of statutes regulating the right of appeal should be resolved in favor of allowing an appeal.' "[3] No statute states that the counties are denied an appeal from a decision of the State Board of Equalization.

The dissent claims that permitting the county to appeal is an absurd result, even though each party is given the right to appeal under a specific section of Nevada law. Rather than absurd, I find that permitting both parties to appeal an administrative decision a fundamentally fair process. These two statutes can be harmonized by simply following our prior decisions and resolving this dispute "in favor of allowing an appeal."[4]

HARDESTY, J., with whom BECKER, C. J., and DOUGLAS, J., agree, dissenting:

Only taxpayers, not counties, may sue to challenge the decisions of the State Board of Equalization under the Legislature's specific statutory scheme to equalize the value of real property.

Nevada's Constitution directs the Legislature to "provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all [real property]."[1] Accordingly, the Legislature adopted NRS Chapter 361 to provide for the assessment and equalization of the value of real property. That statutory scheme specifies the timing and procedures for valuing real property for tax purposes beginning with initial determinations by each county assessor. Taxpayers who claim inequity or erroneous valuation of their property may appeal the county assessor's valuation to the county board of equalization.[2] The taxpayer or the county assessor may thereafter appeal the county board's decision to the State Board of Equalization.[3]

Contrary to the majority's claim that the right of appeal statutes do not abrogate or limit the rights of property holders to appeal, the Legislature imposes several requirements for a taxpayer to seek judicial review of the State Board of Equalization decision. To challenge the findings of the State Board of Equalization,[4] the

---

[3]*Id.* at 184, 827 P.2d at 822 (quoting *Thompson v. District Court,* 100 Nev. 352, 355, 683 P.2d 17, 19 (1984)).

[4]*Id.*

[1]Nev. Const. art. 10, § 1(1).

[2]NRS 361.356(1); NRS 361.357(1).

[3]NRS 361.360(1).

[4]NRS 361.410(1).

taxpayer must pay and protest any disputed taxes.[5] In any action in district court, the taxpayer bears the burden to show by clear and satisfactory evidence that any valuation established by the county assessor, county board of equalization or State Board of Equalization is unjust and inequitable.[6] This burden is deemed to create the presumption that the valuation placed on the property is reasonable.[7]

Nowhere in this statutory scheme, however, does the Legislature grant authority to a county to seek judicial review of State Board of Equalization decisions. When intended, the Legislature has expressly enumerated the appeal rights of a county. When the Legislature is silent, this court should not " 'fill in alleged legislative omissions based on conjecture as to what the legislature would or should have done.' "[8] As noted, the Legislature has expressly granted the county assessor the right to appeal decisions of the county board of equalization to the State Board of Equalization.[9] In NRS Chapter 360, a related chapter on taxation, the Legislature has determined that where a county is a party and is aggrieved by the decision of the Nevada Tax Commission, it may seek judicial review.[10] The Legislature's silence on the County's right to appeal in this instance cannot be viewed as an expression of its intention to grant such a right.

The County relies on NRS 233B.130(1) for authority to seek judicial review. I disagree for three reasons.

First, NRS 233B.130(1) declares that any aggrieved party can seek judicial review of a final decision of an administrative agency. Therefore, if the County can rely on this statute for authority to seek judicial review, then the taxpayer should be able to do so as well. But, as noted, the Legislature has imposed a number of requirements on the taxpayer before seeking judicial review that are not present in NRS 233B.130(1). Accepting the County's interpretation of NRS 233B.130(1) would lead to an absurd result that violates the canon of statutory construction that requires statutes to be read in harmony but promotes the use of a specific statute

---

[5]NRS 361.420(1), (2).

[6]NRS 361.410(2); NRS 361.430.

[7]*Pittsburg Silver Peak v. Tax Commission,* 49 Nev. 46, 52, 235 P. 643, 644 (1925); *Washoe County v. Golden Road Motor Inn,* 105 Nev. 402, 406, 777 P.2d 358, 360 (1989); *Imperial Palace v. State, Dep't Taxation,* 108 Nev. 1060, 1066, 843 P.2d 813, 817 (1992); *Sun City Summerlin v. State, Dep't Tax.,* 113 Nev. 835, 842, 944 P.2d 234, 238 (1997).

[8]*Falcke v. Douglas County,* 116 Nev. 583, 589, 3 P.3d 661, 665 (2000) (quoting *McKay v. Board of Cty. Comm'r,* 103 Nev. 490, 492, 746 P.2d 124, 125 (1987)).

[9]NRS 361.360(1).

[10]NRS 360.245(7).

over that of a general statute where they pertain to the same topic.[11] Under the County's view, either we must accept that NRS 233B.130(1) applies to only one party, the County, or we must allow the taxpayer to rely on the same provision and avoid the onerous burden of proof and the necessity to protest and pay taxes as a condition to appeal.

Second, a proper application of the rule of statutory construction, that specific statutes dealing with a subject matter take precedence over statutes of general application, shows that NRS 233B.130(1) does not apply. That rule of statutory construction provides that a special provision dealing with a particular subject is controlling and preferred to a provision relating only in general terms to the same subject.[12] There can be little question that NRS Chapter 361 deals expressly and in detail with the procedures for determining the assessment and valuation of real property. The provisions of the Administrative Procedure Act (APA), at most, supplement NRS Chapter 361.[13] The statutory scheme of NRS Chapter 361 creates a very specific process for resolving inequity and valuation questions including the imposition of an onerous burden of proof on the taxpayer. If the APA were controlling on the issue of judicial review, the statutory procedures and evidentiary burdens in NRS Chapter 361 would be abrogated.

Finally, this court has previously held that where the APA departs from a specific statutory scheme, the specific scheme controls. In *Sierra Life Insurance Co. v. Rottman,* we concluded that NRS 680A.190, giving the Commissioner of Insurance authority to summarily revoke a certificate of authority, took precedence over NRS 233B.020, which requires an agency to provide notice and an opportunity to be heard to show compliance to the licensee before revocation.[14]

The majority also points to policy reasons to support its decision. In construing statutes, this court's objective is to give effect to the Legislature's intent.[15] When the language of the statute is ambiguous or silent on a particular issue, it should be construed in accordance with what "reason and public policy would indicate the legislature intended."[16] The policies cited by the majority ignore the fact that counties are subordinate instrumentalities created by the State to exercise such governmental powers as are entrusted to

[11]*W. R. Co. v. City of Reno,* 63 Nev. 330, 337, 172 P.2d 158, 161 (1946).

[12]*Id.*

[13]NRS 233B.020(2).

[14]95 Nev. 654, 656, 601 P.2d 56, 57-58 (1979).

[15]*Davenport v. Comstock Hills—Reno,* 118 Nev. 389, 392 n.4, 46 P.3d 62, 64 n.4 (2002).

[16]*Id.* (internal quotation marks omitted).

them.[17] The Legislature did not entrust the County with authority to challenge State Board of Equalization decisions. Further, subordinate government entities lack Fourteenth Amendment due process rights.[18] Therefore, the County is not entitled to remedy an alleged error in an adverse ruling of the State Board of Equalization in the absence of a specific statutory grant of authority to appeal. If this court must consider public policy to decide this case, we should conclude that it is contrary to public policy, and thus contrary to the Legislature's intent, to compel a taxpayer to defend a favorable decision from the State Board of Equalization against a county appeal.

[17]*First Nat. Bk. of S.F. v. Nye Co.,* 38 Nev. 123, 134-35, 145 P. 932, 936 (1914); *Reynolds v. Sims,* 377 U.S. 533, 575 (1964).

[18]*City of Boulder City v. State of Nevada,* 106 Nev. 390, 392, 793 P.2d 845, 846 (1990); *State ex rel. List v. County of Douglas,* 90 Nev. 272, 280, 524 P.2d 1271, 1276 (1974) (stating that a county may not invoke proscriptions of the Fourteenth Amendment against the will of its creator, the State).